

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

NMA:RTP/MCM

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 30, 2018

BY HAND DELIVERY AND ECF

The Honorable William F. Kuntz II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Tara Lenich
               Criminal Docket No. 17-154

Dear Judge Kuntz:

      The government respectfully submits this letter in connection with the defendant Tara Lenich's sentencing hearing, which is scheduled for February 2, 2018. The defendant has pled guilty to illegally wiretapping and recording the private communications of a countless number of individuals for a period of nearly 18 months. To carry out her crimes, the defendant repeatedly created fake judicial documents and forged the signatures of state court judges. For the reasons that follow, including the nature and circumstances of the offense and the need for specific and general deterrence, the Court should sentence the defendant to 24 months' imprisonment and three years of supervised release.

I.    Background

      A.    Procedural History

      On April 3, 2017, the defendant pled guilty to Counts One and Two of a two-count indictment (the "Indictment"). (See Presentence Investigation Report ("PSR") at ¶ 1.) Count One of the Indictment charges that between June 2015 and January 2016, the defendant, without lawful authorization, knowingly and intentionally intercepted and procured another person to intercept and endeavor to intercept oral and electronic communications transmitted to and from Cellular Telephone 1, in violation of 18 U.S.C. §§ 2511(1)(a) and 2511(4)(a). (Id. at ¶ 2.) Count Two of the Indictment charges that between August 2015 and November 2016, the defendant, without lawful authorization, knowingly and intentionally intercepted and procured another person to intercept and endeavor to intercept oral and

electronic communications transmitted to and from Cellular Telephone 2, in violation of 18 U.S.C. §§ 2511(1)(a) and 2511(4)(a).  (Id. at ¶ 3.)

        B.       Circumstances of the Charged Offense

The King's County District Attorney's Office ("KCDA"), also known as the Brooklyn District Attorney's Office, is a government agency responsible for investigating and prosecuting New York State and local criminal offenses in the borough of Brooklyn, New York.  (PSR ¶ 6.)  Assistant District Attorneys ("ADAs") at the KCDA are responsible for investigating and prosecuting such criminal offenses.  (Id.)

In order to investigate and prosecute such criminal offenses, ADAs have the authority to gather evidence in a variety of ways.  (PSR ¶ 7.)  For example, ADAs are authorized by law to apply for orders and warrants to be issued by a judge of a competent court, such as justices for the New York State Supreme Court, to search electronic media stored to search electronic media stored by a telecommunications provider, or to intercept oral or electronic communications transmitted to and from particular telephones.  (Id.)  To obtain such orders and warrants, ADAs are authorized to submit applications to judges that included sworn affidavits from law enforcement personnel.  (Id.)  If a judge considering such an application was satisfied that the application met the relevant legal standard, the judge issues a search warrant and written order authorizing the search or interception, which the ADA or other KCDA staff serve on the telecommunications provider by facsimile or other similar method.  (Id.)

ADAs also gather evidence by issuing, in the name of a sitting grand jury, subpoenas for stored records.  (PSR ¶ 8.)  ADAs often issue such grand jury subpoenas to telecommunications providers for stored records pertaining to particular subscribers.  (Id.)  ADAs are permitted to issue a grand jury subpoena if the ADA had a good faith basis to believe that the information sought by the subpoena is relevant to a criminal investigation the ADA was conducting.  (Id.)

Between July 2005 and November 28, 2016, the defendant was employed as an ADA with the KCDA.  (PSR ¶ 9.)  In the nearly two years leading up to her arrest in this case, the defendant was a supervisor in the KCDA's Violent Criminal Enterprises Bureau, where her primary responsibility was to supervise other ADAs conducting criminal investigations.  (Id.)

        1.       Cellular Telephone 1

Between June 2015 and December 2015, the defendant forged the signatures of various New York State Supreme Court Justices on documents that purported to be judicially authorized orders.  (PSR ¶ 10.)  These forged orders purported to authorize the KCDA and other law enforcement agencies to intercept and record the oral and electronic

2

communications transmitted to and from Cellular Telephone 1, which belonged to Victim 1. (Id.)

To accomplish this forgery, the defendant physically cut-out each such judge's signature from a legitimate document and taped the signature onto the fraudulent documents she had created. (PSR ¶ 11.) In fact, the defendant never submitted to any judge any application for permission to intercept communications transmitted to and from Cellular Telephone 1, and the defendant was not authorized by the KCDA to conduct any investigation involving such communications. (Id.) Each such forged judicial order purported to authorize the continued interception and recording of the communications transmitted to and from Cellular Telephone 1 for an additional 30 days. (Id.) In total, the defendant created and submitted eight forged judicial orders to intercept the oral and electronic communications transmitted to and from Cellular Telephone 1 on June 8, 2016, July 6, 2015, August 3, 2015, September 2, 2015, October 2, 2015, October 30, 2015, November 23, 2015 and December 23, 2015. (Id.)

Subsequent to creating the fraudulent judicial orders to the service provider (Provider 1) for Cellular Telephone 1, the defendant misappropriated KCDA equipment and facilities in order to illegally intercept, eavesdrop and record the oral and electronic communications transmitted to and from Cellular Telephone 1. (PSR ¶ 12.) In addition, as part of the eavesdropping scheme, between May 2015 and November 2016, the defendant created and submitted forged search warrants authorizing the seizure of text messages transmitted to and from Cellular Telephone 1. (Id.)

2. Cellular Telephone 2

Between August 2015 and November 27, 2016, the defendant also created another series of similar forged judicial orders, which she transmitted to the telecommunications company (Provider 2) servicing Cellular Telephone 2, which belonged to Victim 2. (PSR ¶ 13.) Each forged judicial order purported to authorize law enforcement officials to intercept and record the oral and electronic communications occurring over Cellular Telephone 2 for a period of 30 days. (Id.) In total, the defendant created and submitted 17 forged judicial orders to intercept the oral and electronic communications transmitted to and from Cellular Telephone 2 on August 20, 2015, September 18, 2015, October 16, 2015, November 13, 2015, December 11, 2015, January 8, 2016, February 5, 2016, March 4, 2016, April 1, 2016, May 4, 2016, June 3, 2016, July 1, 2016, August 3, 2016, September 2, 2016, September 30, 2016, October 28, 2016, and November 1, 2016. (Id.)

3. Preventing Detection of the Scheme

To avoid having her illegal eavesdropping scheme discovered, the defendant lied to other KCDA employees. (PSR ¶ 14.) Specifically, the defendant informed them that she was intercepting the communications over Cellular Telephone 1 and Cellular Telephone 2

3

as part of a confidential law enforcement investigation that she was conducting, and instructed them not to listen to, read or otherwise review the communications transmitted to and from Cellular Telephone 1 or Cellular Telephone 2. (Id.)

### 4. Unlawful Grand Jury Subpoenas

Between June 2015 and November 27, 2016, the defendant created and submitted several grand jury subpoenas to telecommunication providers seeking subscriber information for some of the telephone numbers that communicated with Cellular Telephone 1 and Cellular Telephone 2 during the period the defendant was illegally eavesdropping on them. (PSR ¶ 15.)

### C. Advisory Guidelines Range

The Probation Department calculates the defendant's advisory United States Sentencing Guideline ("Guidelines") or ("U.S.S.G.") range of imprisonment as follows:

**Count One: Illegal Interception of Communications**

| | |
|---|---|
| Base Offense Level: U.S.S.G. § 2H3.1(a)(1) | 9 |
| Adjustment for Role in the Offense U.S.S.G. § 3B1.3 (abuse of position of public trust) | +2 |
| Adjusted Offense Level (Subtotal) | **11** |

**Count Two: Illegal Interception of Communications**

| | |
|---|---|
| Base Offense Level: U.S.S.G. § 2H3.1(a)(1) | 9 |
| Adjustment for Role in the Offense U.S.S.G. § 3B1.3 (abuse of position of public trust) | +2 |
| Adjusted Offense Level (Subtotal) | **11** |

**Multiple Count Adjustment**

| Count | Adjusted Offense Levels | Units |
|---|---|---|
| One | 11 | 1.0 |
| Two | 11 | 1.0 |

| | |
|---|---|
| Total Number of Units: | 2.0 |
| Greater of the Adjusted Offense Levels Above: | 11 |
| Increase in Offense Level: | +2 |
| Combined Adjusted Offense Level U.S.S.G §3D1.4 | **13** |
| Acceptance of Responsibility U.S.S.G. § 3E3.1(a)) | -2 |
| Total Offense Level: | **11** |

Based upon a total offense level of 11 and a Criminal History Category of I, the applicable advisory Guidelines range of imprisonment is 8 to 14 months. (PSR ¶¶ 20-33, 69.) The parties agree with the advisory Guidelines range set forth in the PSR.

II.   Legal Standard

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure that sentencing courts must follow in light of United States v. Booker, 543 U.S. 220, 258-60 (2005):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

Section 3553(a) directs the sentencing court to consider the following factors, among others, when imposing a particular sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

5

III.     Argument

The government submits that a consideration of the § 3553(a) factors recommends an above-Guidelines sentence of 24 months' imprisonment, especially given the nature and circumstances of the offense and the need for specific and general deterrence.

   A.     Nature and Circumstances of the Offense

For nearly 18 months, the defendant abused her position of trust as a law enforcement officer to commit serious crimes, specifically to spy on colleagues, who were also law enforcement officers.   To do so, the defendant forged the names of judicial officials and lied to others in the KCDA about her actions in an effort to gain information about a romantic partner.   By listening to these communications, she also victimized countless others, including other law enforcement officers, by recording and monitoring their private conversations.   In sum, the defendant violated the public trust, her employer's trust and the privacy rights of countless other individuals for personal reasons; that is, spying on a romantic acquaintance.

As one of the victims has noted in her victim impact statement to the Court, the defendant's conduct will have a lasting impact on the victim and her family for years to come. Among other things, the defendant's actions caused the victim, who, at the time, was a colleague of the defendant's at the KCDA, to resign from her position as an ADA because of the untenable workplace environment the defendant's actions created.   Moreover, as the victim notes, the defendant's conduct is particularly disturbing because of the ease in which personal information can be disseminated into the public sphere via the Internet.   The victim remains fearful that at any moment details of her personal life that were stolen by the defendant will be disseminated to the public, which renders her forever powerless:

> [I will] never know what information, what pictures, what messages and phone conversations [the defendant] has uploaded to the cloud for use at a later time.   To me this crime is ongoing and will always be ongoing because as long as [the defendant] is at liberty I sit and wait for the other shoe to drop, for the next attack.   I want it all erased but I am powerless and will always be powerless because of [the defendant].

(See Second Addendum to the PSR at pgs. 2-3.)

The defendant also victimized the hardworking men and women serving the public at the KCDA by abusing the trust placed in the KCDA by the community and manipulating a legitimate and effective law enforcement tool for her own purposes.   She made unwitting accomplices of her colleagues by tasking them to help her in her scheme, most especially the lawyers she was responsible for supervising and who she instead directed

6

to assist in monitoring her illegal wiretaps. With her actions, she also compromised the integrity of the prosecutions she was handling and supervising, undercutting the very mission of the KCDA.

The defendant's abuse of power also damaged the reputation of the KCDA and its relationships with the law enforcement entities it services and the judges who preside over the prosecutions it brings. In fact, the state court judges whose signatures the defendant repeatedly forged on fraudulent judicial orders that she created are also victims of her crimes. The defendant undermined the authority of these judges to make the final determination as to whether the interception of communications was legally permissible. While relationships and reputations can be rebuilt, the defendant's actions no doubt will contribute to public skepticism about the "government's" abuse of wiretap surveillance, which will be more difficult, if not impossible, to redress.

Moreover, a sentence of 24 months' imprisonment will be comparable to recent sentences imposed for similar conduct. For example, in United States v. Eady, 14-CR-277 (D.N.J.), the defendant was sentenced to 21 months in prison after being convicted at trial of one count of illegal wiretapping. In United States v. Stark, 14-CR-572 (E.D.N.Y.) (Document Number 26), Judge Spatt sentenced the defendant, an attorney who pled guilty to one count of forging the signature of a single bankruptcy judge, to 16 months in prison. In August 2017, a Florida attorney was sentenced to one year in prison after he pled guilty to forging more than 100 judicial signatures on settlement documents. See http://www.miamiherald.com/news/local/crime/article165231737.html. In People of the State of New York v. Rubino, No. 03525-2015, a New York State court sentenced Thomas Rubino, a paralegal at a New York City law firm, to six months in jail following his guilty plea for repeatedly forging the names of state court judges on more than 100 court documents. See https://nypost.com/2017/01/10/overworked-paralegal-gets-jail-for-forging-judges-signatures/.

For all of these reasons, the nature and circumstances of the offense militate in favor of a custodial sentence above the advisory Guidelines range.

B. History and Characteristics of the Defendant

At the time of the defendant's criminal conduct, she was working as a supervisor in the Violent Criminal Enterprises Bureau at the KCDA. While the defendant uses this fact to emphasize that she has been a public servant for many years, the government maintains that she was able to commit these crimes only because of the trust that was placed in her as a public servant. For almost two years, she continually engaged in behavior that ran directly counter to her duties and that put her cases and the KCDA at risk. She abused the trust that was placed in her as an officer of the court by repeatedly forging the signatures of judges and creating fake judicial orders. She abused the trust that was placed in her as a supervisor with the KCDA by misappropriating resources, lying to colleagues, and taking

7

advantage of her subordinates. Each time she created a fake order, forged a judge's signature, issued a bogus grand jury subpoena and lied to a colleague, the defendant made a conscious decision to commit another crime. Indeed, had she not been caught, there is little doubt that she would to this day be committing these crimes. This is longstanding conduct which does not reflect an actual commitment to public service or one instance of aberrational behavior.

      C.      <u>Deterrence</u>

A sentence of 24 months' imprisonment is also warranted to deter others, including law enforcement officials, from committing similar crimes. Indeed, recent cases demonstrate that illegal wiretapping and the creation of fake court documents, including the forging of judge's signatures, are not unheard-of and that courts should impose significant custodial terms to send a strong message to others that this criminal conduct will be punished. In particular, in a time when our most private information can be disseminated to the rest of the public in a matter of seconds, those who steal and compromise this information for their own benefit must fear that they will be punished if caught.

      D.      <u>Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment</u>

As set forth above, the defendant's conduct will have long-lasting consequences to all of her victims and a sentence of 24 months in prison will reflect the seriousness of this conduct and punish her for the harm that she has caused. The sentence will also promote respect for the law by demonstrating that no one, including those entrusted to address violations of the law, are above being held accountable for their actions.

      E.      <u>The Defendant's Arguments are Unavailing</u>

In her sentencing submission, the defendant seeks a non-incarceratory sentence of eight months' home confinement and community service citing a number of reasons, namely, that the defendant was desperate, her behavior was aberrational, she has committed herself to public service, and is remorseful for her conduct. (Def. Memo. at 1.)[1] Despite her

---

[1] In further support of her argument that she should receive a non-custodial sentence, the defendant points to several cases where courts have sentenced defendants to non-custodial terms. (Def. Memo at 24-25). Those cases are inapposite and the Court should give them little weight. For example, Michael Nifong, the prosecutor in the case involving false allegations against members of the Duke lacrosse team (the "Nifong case"), pled guilty to a misdemeanor crime of contempt of court for which the maximum penalty was 30 days' imprisonment. Moreover, Nifong's crime—lying to a judge—occurred on one occasion, not over the course of 18 months like the defendant's conduct here. The defendant also incorrectly relies on United States v. Sanchez, 07-CR-246 (E.D.N.Y.) There, the defendant,

8

claims to the contrary, the defendant, a successful, educated woman, clearly had options short of illegally wiretapping the two cellular telephones, including truthfully reporting any purported concerns she had about the victims to her superiors or law enforcement. As discussed above, the defendant's actions were not aberrational; rather, they persisted over a year, a period during which she consistently and flagrantly abused her position as a public servant to commit her crimes. Further, the defendant's regret regarding the professional and personal consequences of her actions should not overshadow the fact that the defendant did not cease her criminal conduct voluntarily. Rather, the defendant's crimes would have undoubtedly continued to this day had she not be caught.

IV.     Conclusion

Based on the foregoing, the government respectfully requests that the Court reject the defendant's request for a sentence of home confinement and impose an above-Guidelines sentence of 24 months' imprisonment.

                Respectfully submitted,

                RICHARD P. DONOGHUE
                United States Attorney

By: /s/_____
      Robert Polemeni
      Maria Cruz Melendez
      Assistant U.S. Attorneys
      718-254-6044/6408

cc:    Clerk of the Court (WFK) (by hand and ECF)
        Defense counsel (by ECF)

---

a psychologist, was sentenced to probation after pleading guilty to one count of making a false statement to a federal law enforcement officer. Like the defendant in the Nifong case, Sanchez lied on one occasion. More critically, unlike the defendant here, Sanchez was not a prosecutor sworn to uphold the criminal laws and the Constitution. Finally, in United States v. Johnson, 3:16-CR-52 (S.D. Miss), the defendant was sentenced to probation after testifying as a cooperating witness for the government in the corruption trial of his former boss, the District Attorney of Hinds County, Mississippi.