UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA, :
:
:
v. : **MEMORANDUM & ORDER**
: 17-CR-0154 (WFK)
TARA LENICH, :
:
:
Defendant. :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 3, 2017, Tara Frances Lenich ("Defendant") pleaded guilty to an Indictment charging two counts of Illegal Interception of Communications, in violation of 18 U.S.C. § 2511(1)(a). ECF No. 1. The Court now sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to twelve months and one day of incarceration and payment of a $200.00 special assessment.

## BACKGROUND

On March 23, 2017, the United States indicted Defendant on two counts of Illegal

Interception of Communications, in violation of 18 U.S.C. § 2511(a). *See* Indictment at 6–7. On

April 3, 2017, Defendant plead guilty to the Indictment; there is no written plea agreement in this

action. The Court now sentences Defendant and sets forth its reasons for Defendant's sentence

using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and

when a district court chooses to impose a sentence outside of the Sentencing Guidelines range,

the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the

Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. This Court addresses each in turn.

## DISCUSSION

**I.    The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on May 2, 1975, in Worcester, Massachusetts, to William Lenich and Frances Lenich (née Sheerin). *See* Presentence Investigation Report ("PSR") ¶ 47, ECF No. 14. Defendant and her younger brother were raised in an above-average income household, where their basic needs were always met; Defendant reported that their childhoods were free of any abuse. *Id.* ¶ 50. Similarly, Defendant has had good physical health for the majority of her life, with a few notable exceptions. *See id.* ¶ 54. She has stated that she has limited mobility in her left knee, which is the result of surgery to repair an injury she sustained while a passenger in a car that was involved in an accident during her third year of high school, in 1992. *Id.* In 2000 and 2004, Defendant contracted Lyme disease, from which she has since fully recovered. *Id.* And her vehicle was rear-ended in 2015, after which she suffered back pain, muscle

2

inflammation, and swelling. *Id.* Defendant has never had any substance abuse, alcohol, or gambling issues, nor is there evidence that she had serious emotional health problems. *See id.* ¶¶ 55–57. There is, however, evidence to suggest that Defendant maintains close and loving relationships with her parents and her brother, all of whom are aware of Defendant's crimes and are actively supporting her, and that Defendant has a supportive network of colleagues and friends. *See id.* ¶¶ 47-48, 51.

Defendant has a distinguished academic and professional history. She graduated from Wilton High School in Wilton, Connecticut, in 1993; obtained her undergraduate degree from Colby College in Waterville, Maine, in 1997; and graduated with a Juris Doctor degree from Emory University School of Law in 2003. *Id.* ¶ 58. From July 5, 2005, until November 28, 2016, Defendant worked as an Assistant District Attorney ("ADA") for the Kings County District Attorney's Office ("KCDA"). *Id.* ¶ 60.

The KCDA is the government agency—and its ADAs are the government agents— responsible for investigating and prosecuting New York State and local criminal offenses in Brooklyn, New York. *See id.* ¶ 6. In order to investigate and prosecute such criminal offenses, ADAs have the authority to, *inter alia*, apply to judges for orders and warrants in order to search electronic media stored by a telecommunications provider, or to intercept oral or electronic communications transmitted to and from particular telephones. *Id.* ¶ 7. ADAs also gather evidence by issuing subpoenas, in the name of sitting grand juries, for stored records, including from telecommunications providers, where there is a good-faith basis to believe the information sought by the subpoena is relevant to an ongoing criminal investigation. *Id.* ¶ 8.

In her capacity as an ADA, Defendant played an integral role in numerous successful prosecutions, including of defendants possessing large amounts of guns and/or drugs. Beginning in 2014, however, a series of events occurred that Defendant asserts were the impetus for her subsequent crimes. Specifically, a romantic relationship between herself and a married police detective with whom she worked came to a volatile end, after which the detective reportedly subjected Defendant to harassment, including by sending threatening text messages and engaging in unprofessional behavior related to cases they were prosecuting together. *See* Addendum to PSR at 1–2, ECF No. 17. Defendant was single at the time and has never been married. *See* PSR ¶ 49. The detective subsequently allegedly began a romantic relationship with another KDCA employee and, although Defendant purportedly discussed with her boss what she considered to be continued harassment from the two of them, the KCDA allegedly took no action. Addendum to PSR at 1. Accordingly, Defendant "decided to take matters into [her] own hands." *Id.*

Between June 2015 and November 2016, Defendant forged—by physically cutting copies of signatures of various New York State Supreme Court Justices and taping them onto documents—twenty-five purportedly judicially approved orders authorizing the KCDA and other law enforcement agencies to intercept and record oral and electronic communications transmitted to and from the cellphones of the detective and the other KCDA employee. *See* PSR ¶¶ 9–13. Defendant submitted these fraudulent orders to the service providers of the cellphones and misappropriated KCDA equipment and facilities to further her scheme. *Id.* ¶¶ 12–13. Defendant also forged search warrants authorizing the seizure of text messages transmitted to and from one of the cellphones. *Id.* ¶ 12. To avoid detection of these illegal activities, Defendant lied to her

fellow KCDA employees, informing them that she was intercepting communications as part of a confidential law enforcement investigation. *Id.* ¶ 14. Between June 2015 and November 27, 2016, Defendant also created and submitted several grand jury subpoenas to telecommunication providers seeking subscriber information for some of the telephone numbers that communicated with the cellphones. *Id.* ¶ 15.

This conduct led to Defendant's indictment by the U.S. Government. Defendant self-surrendered to Federal Bureau of Investigation agents on March 27, 2017 and was released that same day on a $500,000.00 unsecured bond. PSR at 1, ¶ 16.

## II. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter her and others from engaging in any similar criminal activity in the future. The Court takes into account the detrimental impact Defendant's crimes had on public trust in law enforcement and the criminal justice system, the extent to which her crimes invaded the victims' privacy, and the impact of Defendant's crimes on the victims' reputations, careers, and mental and emotional wellbeing. The Court also considers Defendant's loving and supportive family and network of friends, her years of public service to the community during her tenure as an ADA, the difficult

circumstances unique to Defendant's specific crime, the punishment she has already suffered in the form of the loss of her ability to practice her chosen career, and the volunteer work and educational programming she has done since pleading guilty to the instant offenses.

## III. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant plead guilty to two counts of Illegal Interception of Communications, in violation of 18 U.S.C. § 2511(1)(a), for which she faces a maximum term of imprisonment of five years per count, 18 U.S.C. § 2511(4), which may run either consecutively or concurrently, 18 U.S.C. § 3584. If a term of imprisonment is imposed, the Court may also impose a term of supervised release of not more than three years, 18 U.S.C. § 3583(b)(2), where multiple terms shall run concurrently, 18 U.S.C. § 3624(e). Because each offense is a Class D felony, Defendant may also be sentenced to a term of probation of not less than one nor more than five years, 18 U.S.C. § 3561(c)(1), with one of the following conditions unless extraordinary circumstances exist: a fine, restitution, or community service, 18 U.S.C. § 3563(a)(2). Defendant also faces a maximum fine of $250,000.00 per count, 18 U.S.C. § 3571(b), and payment of the mandatory special assessment of $100.00 per count, 18 U.S.C. § 3013.

## IV. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2H3.1(a)(1) applies to violations of 18 U.S.C. § 2511(1)(a) and sets a base offense level of nine for each count. *See* United States Sentencing Commission, *Guidelines Manual*, § 2H3.1(a)(1) (Nov. 2016) ("USSG" or "Guidelines"). Because Defendant abused a position of public trust, and/or used a special skill, in a manner that significantly facilitated the commission and/or concealment of the offense, the offense level is increased by two levels. *Id.* § 3B1.3. Accordingly, the adjusted offense level for each count is eleven.

For the purposes of determining a Guidelines sentencing range where there are multiple distinct offenses, or "Groups," the Court must determine the total combined offense level by taking the adjusted offense level applicable to the Group with the highest offense level. *Id.* § 3D1.4. Because both Groups carry identical offense levels of eleven, the adjusted offense level is eleven. *Id.* That offense level must then be increased by an amount that is determined by the number of "Units," where the count with the highest offense level is one Unit and each count that is equally serious or from one to four levels less serious counts as an additional Unit. *See id.* § 3D1.4(a). Here, there are two Units because the Defendant has pled guilty to two offenses that are equally serious. *See id.* Accordingly, the Guidelines direct a two-level increase, which results in an offense level of thirteen. The Guidelines permit a two-level reduction, however, because Defendant has clearly accepted responsibility for her crimes. *Id.* § 3E1.1(a). Accordingly, Defendant's total combined adjusted offense level is eleven. Because Defendant has no prior arrests or convictions, *see* PSR ¶¶ 40–45, she has a criminal history score of zero and a criminal history category of one, USSG ch. 5, pt. A.

Given a total offense level of eleven and a criminal history category of one, the Guidelines suggest a term of imprisonment of between eight and fourteen months. *Id.* As an

alternative, the Court may impose a term of imprisonment of one month followed by a term of supervised release with a special condition requiring seven months of community confinement or home detention. *Id.* § 5C1.1(c)(2). As a further alternative, the Court may impose a sentence of probation[1] that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG § 5C1.1(c). The Guidelines further provide for a term of supervised release of one to three years, *id.* § 5D1.2(a)(2); a fine of between $4,000.00 and $40,000.00, *id.* § 5E1.2(c)(3); and payment of the costs of prosecution, *id.* § 5E1.5.

## V. Pertinent Policy Statements of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not applicable in this case.[2]

---

[1] Since the applicable Guidelines range is in Zone B of the Sentencing Table, the Guidelines suggest Defendant is eligible for a period of probation of at least 1 year but not more than 5 years. USSG § 5B1.2. If a period of probation is imposed, a condition requiring a period of community confinement, home detention, or intermittent confinement is required. *Id.* § 5B1.1(a)(2).

[2] The Court has considered the applicability of USSG § 5K1.1, which states that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." There is no indication that Defendant provided the Government with any information about any other person who committed an offense and to apply this particular policy statement to Defendant's conduct would be a perversion of its purpose—the Guidelines provide other means by which a court may recognize a defendant's decision to be forthcoming, namely USSG § 3E1.1.

The Court has also considered the applicability of USSG § 5K2.20, which explains a "court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or a single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." While Defendant's crimes were plainly a deviation, they just as plainly required significant planning and spanned the course of over a year.

Accordingly, it is not a close question that neither of these policy statements applies, technically or otherwise. The Court's consideration of Defendant's history and characteristics more than adequately takes into account Defendant's employment record and cooperation with the authorities after they became aware of her illegal activities.

## VI. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Courts in this District, as well as in other Districts, have imposed in some instances below-Guidelines sentences for crimes that similarly involve abuse of a position of trust. *See* Judgment, *United States v. Sanchez*, 07-CR-0246 (E.D.N.Y. Sept. 15, 2008) (Ross, J.) (sentencing defendant who plead guilty to making false statements to DOJ regarding an ongoing sexual relationship with inmate of prison where she was psychiatrist to probation); *see also* Judgment, *United States v. Johnson*, 16-CR-0052 (S.D. Miss. Sept. 14, 2017) (sentencing ADA who accepted bribes to provide favorable treatment for defendants in cases brought by his office to probation). The Court is also mindful that the vast majority of defendants nationwide who were sentenced post-*Booker* and under USSG § 2H3.1 received probationary sentences. *See* Nat'l Ctr. of Insts. and Alternatives Inc., Federal Sentencing Statistical Analysis Report, ECF No. 18-22 at 3. On the other hand, in a June 2016 sentencing in this District, the defendant, an attorney who pled guilty to one count of forging the signature of a bankruptcy judge, was sentenced to 16 months in prison. *See* Judgment, *United States v. Stark*, 14-CR-572 (E.D.N.Y. 2016) (Spatt, J.). For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

## VII. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in this case, *see id.* § 3663.

## CONCLUSION

A sentence of twelve months and one day of incarceration and payment of the $200.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto.

SO ORDERED.

S/William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 2, 2018
Brooklyn, New York